IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONALD BROWN, | § | |
|       Plaintiff | § | |
| v. | § | Civil Action No. 3:10-CV-00275-O-BK |
| MICHAEL J. ASTRUE,<br>**Commissioner of Social Security,** | § | |
|       Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the district court's order of reference dated June 28, 2010, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. For the reasons set forth herein, it is recommended that the case be reversed and remanded for further proceedings.

### I. BACKGROUND[1]

**A.** **Procedural History**

Donald Brown (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under the Social Security Act. In March 2007, he protectively filed for SSI and DIB, claiming that he had been disabled since January 1, 2007, due to lupus, paresthesia (numbness and/or tingling), and a seizure disorder.[2] (Tr. at 37). His

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

[2] All medical terms have been defined by reference to *Stedman's Medical Dictionary* (27th ed. 2000) available on Westlaw.

application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 37, 64-65). He personally appeared and testified at the hearing, held in November 2008. (Tr. at 9-29). In February 2009, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 42). In October 2009, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 4, 8). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.    Factual History**

   **1.    Age, Education, and Work Experience**

Plaintiff was 30 years old at the time of the administrative hearing and had a high school education. (Tr. at 42, 96, 122). He had past relevant work history as a cashier, stocker, and construction laborer. (Tr. 119, 128-35).

   **2.    Medical Evidence**

As relevant to the time frame in this case, Brown went to the emergency room for coughing, vomiting, and a fever in January 2007, and he was admitted to the hospital for four days where he received a blood transfusion. (Tr. at 215-216). Ten days later, he was admitted to the hospital for approximately three weeks with a sore throat, high fever, anemia, and seizures, and he ultimately had to be intubated and placed on a ventilator in intensive care due to respiratory failure. (Tr. at 239, 241, 262-63, 267, 274, 278, 288, 290). Because of the intubation, Plaintiff developed myopathy (an abnormal condition or disease of the muscles). (Tr. at 263, 267, 302). Plaintiff eventually was diagnosed with systemic lupus erythematosus (SLE). (Tr. at 262). In February 2007, he was transferred to a rehabilitation facility to improve his

strength and continue his SLE treatment. (Tr. at 265, 719). At the time of admission, he was significantly disabled, feverish, and weak, but made slow progress. (Tr. at 366, 701, 872, 910, 916-17). Plaintiff was transferred back to the hospital intensive care unit approximately three weeks later where he stayed for twelve days and was diagnosed with hypertension, chronic respiratory failure, and SLE. (Tr. at 735, 872). Plaintiff continued with physical therapy, but had difficulty standing, balancing, and sitting, and was given antidepressants to treat his depression. (Tr. at 436-37, 735). Plaintiff left the hospital in March 2007 with a plan to undergo home physical therapy and occupational therapy. (Tr. at 735).

In April 2007, Plaintiff saw a doctor and complained of loose stools, which he had been experiencing since his discharge from the hospital, and he was diagnosed with, *inter alia*, SLE, myopathy, seizure disorder, and depression. His myopathy was improved due to his continuing physical therapy, he felt happy, and he had a normal appetite. (Tr. at 729). Plaintiff chiefly complained of loose stools and numbness in his toes. (Tr. at 729-30). In May 2007, treating physician Dr. Andres Quiceno saw Plaintiff for tremors and paresthesia in his toes, but he reported feeling better, and his lupus was in excellent control although he had some difficulty getting out of bed, dressing, walking, and grooming himself. (Tr. at 722, 798-99). In June 2007, Plaintiff reported to Dr. Quiceno that he was doing better, although he complained of diarrhea, paresthesia in his hands and feet, and difficulty getting out of bed, and the doctor noted that his paresthesia would interfere with his ability to work. (Tr. at 790, 792). In September 2007, he again reported diarrhea and paresthesia, as well as difficulty dressing himself and walking, but stated that his paresthesia had been the same for several months, and he otherwise had no complaints. (Tr. at 818, 848-49).

Plaintiff stated that he was doing well and his paresthesia was better in December 2007, he had full muscle strength in all extremities, and Dr. Quiceno noted that his SLE was in excellent control such that Plaintiff was able to return to work. (Tr. at 845). By March 2008, Plaintiff's SLE still was under control, although he felt tired sometimes, had three to four bowel movements a day, paresthesia, and difficulty taking care of his grooming needs. (Tr. at 853-54).

From March 2008 to July 2008, Plaintiff saw Dr. Raza Ahmed Jafry, who reported that Plaintiff complained of chronic diarrhea, which was aggravated by Plaintiff's consumption of a lot of Gatorade and dairy products. (Tr. at 858-62).

### 3. Hearing Testimony

The ALJ held a hearing in November 2008, at which Plaintiff testified that about half the time he had no energy or strength to get out of bed, and he continued to have diarrhea and tingling in his toes. (Tr. at 15, 21-25). He had not had a seizure since he was in the hospital in 2007. (Tr. at 15-16). After he woke up in the morning, he would take his medicine, eat, and try to exercise, he was able to cook and groom himself, and he attended church. (Tr. at 16-17). The medication controlled his SLE well, and he had no lupus symptoms, but he did have dizzy spells throughout the day and felt that he could not work due to his weakness, fatigue, and need to use the bathroom often. (Tr. at 18-20, 25).

A vocational expert (VE) testified that a hypothetical individual who could sit for six hours, stand/walk for four to six hours, lift and carry twenty pounds occasionally and ten pounds frequently, feel and reach, and occasionally crawl, stoop or climb, but not work at heights or around dangerous machinery would be able to work as a "cashier II." (Tr. at 27). However, if that individual was unable to work for half the month or had to take unscheduled bathroom

breaks three or four times a day for fifteen minutes each, the VE testified the person would not be able to work. (Tr. at 28).

C. **ALJ's Findings**

In February 2009, the ALJ concluded that Plaintiff had the severe impairments of SLE, paresthesias, and a seizure disorder, but those impairments did not entitle him to an award of benefits. (Tr. at 39). The ALJ first noted that while Plaintiff had been diagnosed with SLE in March 2007, he had acknowledged that his condition had stabilized and that he experienced only occasional flare-ups where he had to stay in bed. (Tr. at 40). Additionally, Plaintiff's activities of daily living indicated that he was able to care for himself. (Tr. at 40). The ALJ determined that Plaintiff's impairments reasonably could be expected to cause his symptoms, but Plaintiff's statements concerning the limiting effects of those symptoms were not credible because they were inconsistent with the ALJ's Residual Functional Capacity (RFC) assessment. (Tr. at 40). Further, while Plaintiff was hospitalized for an extensive period of time in early 2007, his condition stabilized within three months. (Tr. at 41). Additionally, while Plaintiff's treating physician noted that Plaintiff's paresthesias affected his ability to work, the treatment records indicated that the numbness only affected his toes. (Tr. at 41). The ALJ also noted that the treatment records reflected minimum mention of Plaintiff's diarrhea and, thus, the degree of limitation alleged "far exceeded" the medical evidence. (Tr. at 41). Further, the ALJ noted that treating physician Dr. Quiceno stated that Plaintiff was much better by December 2007 and could work. This fact, plus Plaintiff's SLE being under "excellent control" and his occasional fatigue and diarrhea, only would preclude him from exertionally demanding work and, due to his numbness, he should not work at heights, climb ladders, or operate heavy machinery. (Tr. at 41).

Thus, the ALJ concluded that Plaintiff could perform his past relevant work as a cashier II, which involved carrying ten pounds frequently and twenty pounds occasionally, standing and/or walking four to six hours in a work day, and sitting for six hours in a work day, which was supported by the VE's testimony. (Tr. at 41).

D.  **Administrative Appeal Proceedings**

Plaintiff filed an appeal brief in May 2009, attaching Dr. Jafry's March 2009 RFC questionnaire. (Tr. at 174-89). In his assessment, Dr. Jafry noted that he had seen Plaintiff every four to six months for a two- to three-year period and opined that Plaintiff had four of the eleven symptoms of SLE that satisfy the recognized diagnostic criteria, including (1) renal involvement, (2) hemolytic anemia, or leukopenia, lymphopenia, or thrombocytopenia, (3) anti-DN, and (4) a positive test for ANA. (Tr. at 185). Dr. Jafry also noted that Plaintiff was not a malingerer, his impairments were consistent with the functional limitations listed in the questionnaire, and his fatigue, mental issues, and pain were severe enough to interfere with his ability to concentrate at work, such that Plaintiff was only capable of a low stress job due to his anxiety and depression. (Tr. at 186-87). Dr. Jafry opined that Plaintiff could walk only one city block, sit and stand for fifteen minutes at a time, and sit and stand for less than two hours in an eight-hour work day, plus he needed to shift positions at will and take four to five unscheduled ten- to fifteen-minute breaks in a work day. (Tr. at 187-88). In Dr. Jafry's opinion, Plaintiff could occasionally lift less than ten pounds, rarely lift twenty to fifty pounds, and was likely to be absent from work more than four days a month. (Tr. at 183, 188-89).

In October 2009, the Appeals Council noted that it had considered Dr. Jafry's RFC assessment, but the information did not provide a basis for changing the ALJ's decision, and Plaintiff sought review in the district court. (Tr. at 4, 7).

## II. ANALYSIS

### A. <u>**Legal Standards**</u>

#### 1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

#### 2. **Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the claimant is deemed disabled without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden of proof lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38

F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.**     **Issues for Review**

      **1. Whether the Appeals Council failed to give proper weight to Dr. Jafry's opinion**.

Plaintiff contends that the Appeals Council erroneously rejected Dr. Jafry's treating physician opinion without explanation or good cause, even though his opinion was directly at odds with the ALJ's opinion. Plaintiff maintains that remand is required for further consideration of Dr. Jafry's RFC assessment. (Doc. 16 at 15-18).

The government responds that the Appeals Council had no duty to specifically discuss Dr. Jafry's RFC assessment, and the district court cannot remand the case because Plaintiff has not established good cause for his failure to incorporate Dr. Jafry's RFC assessment earlier in the proceedings. (Doc. 17 at 9-12). Next, the government argues in conclusory fashion that the new RFC assessment is not material because Dr. Jafry's assessment is too summary and is not supported by the other medical evidence. (*Id.* at 12-14).

Plaintiff replies that he need not show good cause for failure to submit Dr. Jafry's RFC assessment earlier because the regulations allow claimants to submit new and material evidence to the Appeals Council. (Doc. 18 at 4-5). Additionally, Plaintiff maintains that the government's attempt to *post hoc* rationalize the Appeals Council's decision is improper where the Council did not properly weigh Dr. Jafry's opinion in the first place. (*Id.* at 5-7).

Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart*, 405

9

F.3d 332, 337 (5th Cir. 2005). "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating physician. 20 C.F.R. § 404.1527(d). In fact, when "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the Commissioner must give such an opinion controlling weight. *Id.* If the evidence supports a contrary conclusion, an opinion of any physician may be rejected. *Newton*, 209 F.3d at 455. A treating physician's opinion also may be given little or no weight when good cause exists, such as "where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 455-56.

Based on its internal procedures, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it. *Higginbotham*, 405 F.3d at 335 n.1 (referring to a memorandum from the Commissioner's Executive Director of Appellate Operations dated July 1995). Nevertheless, where new medical opinion evidence is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination, several judges have found that the case should be remanded so that the Appeals Council fully can evaluate the treating source statement as required by law. *Stewart v. Astrue*, 2008 WL 4290917 *4 (N.D. Tex. 2008); *see also Jones v. Astrue*, 2008 WL 3004514 at *4-5 (S.D.Tex. 2008) (remand required where the summary denial of a request for review provided no indication that the Appeals Council evaluated the treating source statement as required by SSR 96-5); *Green v. Astrue*, 2008 WL

3152990 at * 7-9 (N.D.Tex. 2008) (remand required where the summary denial of a request for review provided no indication that the Appeals Council evaluated the treating source statement pursuant to 20 C.F.R. § 404.1527); *Stevenson v. Astrue*, 2008 WL 1776504 at *3-4 (N.D.Tex. 2008) (same); *cf.* SSR 96-5 (providing that adjudicators must weigh medical source statements and RFC assessments and "provide appropriate explanations for accepting or rejecting such opinions"). This caselaw also finds support in 20 C.F.R. § 404.1527(f)(3), which requires that when the Appeals Council makes a decision, it must follow the same rules for considering medical opinion evidence as ALJs follow.

In the case at bar, Dr. Jafry's RFC assessment significantly conflicts with the ALJ's assessment of Plaintiff's work abilities in relation to Plaintiff's ability to lift ten to twenty pounds, the length of time he can sit, stand, and walk, and whether he needs to take numerous unscheduled breaks throughout the day. (Tr. at 41, 183, 187-89). Moreover, Dr. Jafry's assessment is supported by some of the other medical evidence of record, which documents Plaintiff's fatigue, parasthesia, weakness, and diarrhea. (Tr. 436-37, 729, 735, 790, 792, 818, 848-49, 853-54, 858-62). Although the government urges this court to weigh Dr. Jafry's opinion in light of the other evidence of record, it is not this court's role to weigh that opinion, try the issue of Plaintiff's RFC *de novo*, or substitute its judgment on the issue of disability for that of the Commissioner. *Greenspan*, 38 F.3d at 236. Accordingly, this case should be remanded for further consideration in light of Dr. Jafry's treating source opinion.

**2. Whether the ALJ failed to make sufficient findings under the Listings**.

Plaintiff next argues that the ALJ did not identify the listed impairment for which his symptoms failed to qualify, nor did the ALJ explain how he reached that conclusion. (Doc. 16 at

12-13). Further, Plaintiff claims that this prejudiced him because he meets or medically equals Listing § 14.02 due to his SLE, as demonstrated by Dr. Jafry's RFC assessment showing that Plaintiff had renal, hematologic, and mental involvement, as well as four of the eleven diagnostic criteria of SLE. (*Id.* at 13-14).

The government responds that while the ALJ's conclusion that Plaintiff did not satisfy the Listings was conclusory, the error was harmless because there is insufficient evidence that Plaintiff met Listing § 14.02 since his condition stabilized within a year. (Doc. 17 at 6-9).

In reply, Plaintiff contends that Dr. Jafry's RFC assessment demonstrates that he met Listing § 14.02, and that assessment must be considered even though he presented it to the Appeals Council for the first time. (Doc. 18 at 2-3).

As noted above, evidence submitted for the first time to the Appeals Council is considered part of the record and must be evaluated. *Higginbotham*, 405 F.3d at 337. In *Audler v. Astrue,* 501 F.3d 446, 448 (5th Cir. 2007), the Fifth Circuit noted that the ALJ's failure to identify the listed impairment for which the claimant's symptoms failed to qualify or explain how she reached that conclusion, was beyond meaningful review. The Court then conducted a harmless error analysis and concluded that the claimant's substantial rights had been affected by the error because the treating physician opined that the claimant had significant limitations that would have prevented her ability to work, and there was no contrary medical evidence in the record. 501 F.3d at 449.

SLE is a disorder of the immune system characterized by fever, fatigue, malaise, and weight loss. 20 C.F.R. Subpart P Appendix 1 Listing 14.00B.1. More specifically, Listing 14.02 provides that (A) the SLE could involve two or more organs/body systems (joint, muscle, ocular,

12

respiratory, cardiovascular, digestive, renal, hematologic, skin, neurological, or mental), one of which is involved to at least a moderate level of severity, and at least two of the following symptoms: severe fatigue, fever, malaise, or involuntary weight loss. Alternatively, the claimant could demonstrate (B) repeated manifestations of SLE with at least two of the above-listed symptoms as well as one of the following: limitation of activities of daily living, maintaining social function, or completing tasks in a timely fashion due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Subpart P Appendix 1 Listing 14.02. Plaintiff argues that he satisfies the Listing under both of these requirements based on his renal and hematologic involvement as well as his fatigue and pain. (Doc. 16 at 14-15; Doc. 18 at 3-4).

The government concedes that the ALJ failed to discuss the applicable Listing in this case. Therefore, the only issue is whether Plaintiff's substantial rights were harmed by this omission. *Audler,* 501 F.3d at 449. In this case, the medical documentation provides that Plaintiff has suffered from renal and hematologic problems as a result of his SLE. (Tr. at 185, 240). Further, Plaintiff's fatigue, fever, and malaise are well documented in the record, and he has had repeated manifestations of SLE. (Tr. 215-16, 239, 735, 872). Finally, he has documented depression. (Tr. at 436-37, 729, 735). While Dr. Quiceno noted in December 2007 that Plaintiff had full strength in all of his extremities and could return to work, this finding does not necessarily mean that Plaintiff did not meet or equal Listing 14.02, particularly in light of Dr. Jafry's March 2009 opinion that Plaintiff had significant functional restrictions on his work ability that were not impacted by Plaintiff's strength, such as his fatigue and mental problems. (Tr. at 185-89). As noted above, the ALJ has not had the opportunity to consider Dr. Jafry's RFC assessment. Accordingly, this case also should be vacated and remanded for further proceedings

so that the ALJ can address whether Plaintiff meets or equals Listing 14.02, particularly in light of the new evidence Plaintiff presented to the Appeals Council.

### 3. Whether the ALJ's finding that Plaintiff is capable of sustained work is supported by substantial evidence and whether the ALJ made sufficient findings regarding Plaintiff's ability to perform his past relevant work.

Plaintiff next argues that (1) the ALJ incorrectly found that he is capable of working a full time job despite his SLE, paresthesias, and seizure disorder, and the fact that his chronic diarrhea requires that he take four or five unscheduled breaks throughout the day (Doc. 16 at 18-19); (2) the ALJ's finding in this regard is further undermined by the frequency of Plaintiff's medical appointments as well as Dr. Jafry's opinion that Plaintiff would need numerous unscheduled breaks throughout the day to rest and likely would miss several days of work each month (*id.* at 19-20); and (3) the ALJ did not make the fact findings needed to determine that Plaintiff could engage in his past work as a cashier because. *inter alia*, there are more restrictive limitations on Plaintiff's RFC documented in the record (*id.* at 21-23).

The court recommends a remand of this case based on (1) the Appeals Council's failure to adequately address Dr. Jafry's RFC assessment and (2) the fact that the ALJ did not have the benefit of Dr. Jafry's assessment and did not make sufficient findings as to whether Plaintiff met Listing 14.02. Therefore, there is no need for the court to address Plaintiff's remaining issues because they both will be affected by consideration of Dr. Jafry's RFC assessment on remand.

### III. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court REVERSE AND REMAND this case for further proceedings.

**SO RECOMMENDED** on September 13, 2010.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE